UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:17 CR 435 CDP (JMB) |
| | ) |
| DENNIS M. SUELLENTROP, JR., | ) |
| | ) |
| Defendant. | ) |

**GOVERNMENT'S AMENDED RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

COMES NOW, the United States of America, by and through Jeffrey B. Jensen, United States Attorney for the Eastern District of Missouri, and Robert F. Livergood, Assistant United States Attorney for said District, and for its Amended Response in Opposition to Defendant's Motion to Suppress Evidence (Doc. #25), states as follows:

**I.   INTRODUCTION**

The defendant has been charged by an indictment with seven counts of production of child pornography and one count of possession of child pornography. The defendant moves to suppress evidence obtained from the search of his cellular phone. Defendant does not move to suppress statements[1] or any other physical evidence.

The evidence adduced at the evidentiary hearing will show that defendant's cell phone

---

[1] Even if defendant had moved to suppress his statements, it is likely that the Court would deny his motion because defendant's statements were voluntary made after being advised of his *Miranda* rights. *See United States v. Woods*, 829 F.3d 675, 680 (8th Cir. 2016). Additionally, it is likely that the Court would deny suppressing defendant's second interview because during the second interview, Cpl. Poe reminded defendant that Dep. Lunsford previously advised him of his rights. *See United States v. Nguyen*, 608 F.3d 368, 374-75 (8th Cir. 2010).

1

was properly searched, and even if it were not, the evidence is admissible under the good faith exception and the inevitable discovery doctrine.

## II.  FACTS

The government anticipates the evidence at the evidentiary hearing will establish the following:

Defendant lived at 2566 East Rock Creek Road, Arnold, Missouri, with his infant daughter, M.S, who was born in June of 2016. Defendant also lived with Sarah Marcher, his girlfriend and the mother of M.S.; and Paul Donnelly and Donnelly's girlfriend. Defendant's residence is located in the Eastern District of Missouri.

On December 31, 2016, defendant told Donnelly the passcode to defendant's cell phone, an LG Electronics cell phone. On January 1, 2017, Donnelly wanted to make a telephone call so he went to the defendant's room to use the cell phone. He unlocked the cell phone and made the call. After he hung up, he started to look through the defendant's cell phone. When he opened the picture gallery on the cell phone, Donnelly saw pictures of M.S. One of the pictures depicted defendant with his penis near M.S.'s mouth and ejaculate on her face. Another picture was of defendant inserting his penis into M.S.'s mouth. Donnelly also observed a video of defendant touching M.S. butt and vagina, and defendant "French kissing" her. He saw other picture and video files on defendant's phone but did not look at their content. Donnelly then called 9-1-1 and waited for the police to come to the residence.

On January 1, 2017, Deputy Roberts of the Jefferson County, Missouri, Sheriff Office received a radio dispatch to go to 2566 East Rock Creek Road, Arnold, Missouri. He arrived at the residence around 1:38 p.m. Roberts contacted Donnelly. Donnelly explained what happened

2

and handed Roberts defendant's cell phone. Roberts saw the picture of defendant's penis near M.S.'s face and ejaculate on her face. Roberts turned the phone off.

Other officers arrived. Roberts and other officers went to defendant's bedroom and arrested defendant. Defendant was placed in Deputy Lunsford's vehicle.

At about 1:59 p.m., Deputy Lunsford advised defendant of his *Miranda* rights using the Jefferson County Sheriff's Office Advice of Rights form. Defendant waived his rights, signed the form about 2:07 p.m., and agreed to talk with the law enforcement officers. Lunsford explained that Donnelly found pictures of defendant sexually abusing his daughter. Defendant said, "I am guilty of that." Defendant said that he put his penis around M.S.'s mouth but did not penetrate it. He also said he put his penis outside of her vagina but did not penetrate it. He said he sexually abused his daughter in retaliation against her mother, Marcher. Defendant made a written statement. Defendant wrote, "I made explicit photos in retaliation for my girlfriend cheating on me and turning against me. There were suggestive photos but no penetration or forced actions with our daughter."

Cpl. Poe was another officer who arrived on the scene. Poe took possession of defendant's cell phone, an LG smartphone. Poe then contacted defendant, who was still at the scene and seated in Lunsford's patrol vehicle. At that time, defendant had already been advised of his *Miranda* rights and had spoken with Lunsford. Around 2:23 p.m., Poe asked defendant for permission to search his residence. Defendant said he was concerned that a recent occupant had left methamphetamine paraphernalia in the home so he did not want police to search. Defendant asked Poe if refusing to consent would be held against him. Poe responded that he would just apply for a search warrant. Poe then left with defendant's cell phone.

3

Poe met with the on-call prosecutor to prepare a search warrant. Poe discussed the phone with the prosecutor and believed that obtaining a search warrant for defendant's residence would cover searching the cell phone because it had been obtained from the residence. After preparing the necessary paperwork, the paperwork was electronically transferred to the judge. *See* Attachments 1 and 2 (Search Warrant Application and Affidavit).

The Honorable Timothy Miller, Judge of Division Fourteen of the Twenty-Third Judicial Circuit, State of Missouri, reviewed the warrant application and issued a warrant. *See* Attachment 3. Poe and other officers returned to defendant's residence and executed the search warrant. Various items were seized pursuant to the warrant. After executing the search warrant, a return was filed. The return listed the items including defendant's cell phone, which was listed as: "One LG Brand Phone provided by Reporting Party upon initial arrival." *See* Attachment 4.

In addition to the search warrant, Judge Miller issued an arrest warrant charging defendant with three counts of child molestation in the first degree. *See Missouri v. Suellentrop*, 17JE-CR00001. Defendant was held in the Jefferson County Jail. Later, additional charges were filed against defendant.

On January 3, 2016, Poe interviewed defendant at the Jefferson County Jail. At around 9:54:50 a.m., Poe reminded defendant that Lunsford had previously informed him of his *Miranda* rights. During the recorded interview defendant made additional incriminating statements. Defendant did not invoke his rights during the interview.

Around January 25, 2017, Poe took defendant's cell phone to the Narcotics' Office where the personnel were able to assist in extracting evidence from the phone. During the extraction, Poe realized he had left the password for the phone at his office. A partial extraction was made

4

and the evidence was saved to a CD. Later, Poe returned and full extraction was made and copied to another CD. Poe reviewed the contents that were extracted from defendant's cell phone.

The case was referred for federal prosecution. On June 20, 2017, Special Agent John "Mark" Burbridge of the FBI applied for and was granted a search warrant to search defendant's cell phone in 4:17 MJ 1191 JMB. *See* Attachments 5 and 6. On September 27, 2017, defendant was indicted and charged with seven counts of production of child pornography, and one count of possession of child pornography in *United States v. Suellentrop*, 4:17 CR 435 CDP JMB.

On January 23, 2018, defendant filed his Motion to Suppress Evidence. (Doc. #25). Defendant moves to suppress the evidence observed on the phone and any evidence derived therefrom arguing that law enforcement officers illegally viewed the content defendant's cell phone. Additionally, defendant argues that when a subsequent federal search warrant was obtained, it was defective because it misstated certain facts.

## III.   LEGAL ANALYSIS

A.   Private Search of Defendant's Cell Phone

On January 1, 2017, Donnelly, defendant's roommate, viewed the contents of defendant's LG Electronics cell phone. When he viewed the contents of the phone, he observed pictures of defendant sexually abusing his infant daughter. Donnelly then called the police.

Donnelly's search of defendant's phone was not initiated by the police, nor was the search done as a result of a police officer's request. It was a private search. "Private searches do not implicate the Fourth Amendment. The Fourth Amendment protects only against government action. A search by a private party with no government knowledge or participation does not

5

implicate this constitutional right to be free from unreasonable searches and seizure." *United States v. Gonzalez*, 781 F.3d 422, 429 (8th Cir. 2015) (cites and internal quotations marks omitted); *see also United States v. Goodale*, 738 F.3d 917, 921 (8th Cir. 2013).

Here, Donnelly acted on his own in searching defendant's phone. The government had no knowledge that Donnelly was examining defendant's cell phone, there was no indication that Donnelly was attempting to assist law enforcement in examining defendant's cell phone, and the police did not request Donnelly to look at the phone. Thus, the Fourth Amendment was not implicated when Donnelly looked at the contents of defendant's phone. *See United States v. Sigillito*, 759 F.3d 913, 926 (8th Cir. 2014). Once he saw the images of defendant molesting his daughter, he contacted the police.

After Donnelly examined the images, the Dep. Roberts was able to reexamine the phone without violating the Fourth Amendment. *See United States v. Starr*, 533 F.3d 985, 995 (8th Cir. 2008). In that case, Starr engaged in sexual communications with minor girls. He had some of them make pictures and videos of themselves engaged in sexually explicit conduct and send those to him. Defendant's wife became suspicious of Starr and investigated his online activity. She then provided the police with pictures and videotapes. She told officers that she had reviewed the items and was concerned that they contained child pornography. *Id*. at 992. A search warrant was obtained for Starr's residence and additional items were seized. Later, when Starr was arrested, he was given his *Miranda* rights and gave written consent to the officers to search his residence. Starr was indicted for production of child pornography, as well as other charges. He moved to suppress evidence that the police obtained from his wife. The trial court denied Starr's motion.

On appeal, Starr claimed that the evidence submitted by his wife to the police was obtained in violation of the Fourth Amendment. The court of appeals found that private searches are not covered by the Fourth Amendment's protections. "When the government re-examines materials following a private search, the government may intrude on an individual's privacy expectations without violating the Fourth Amendment, provided the government intrusion goes not further than the private search."  *Id*. at 995 (citation omitted).

Here, Donnelly told Deputy Roberts what he had seen. Roberts viewed one of the several images that Donnelly had observed. Roberts viewing of the imaged on defendant's cell phone was not an intrusion on defendant's expectation of privacy because Donnelly had already seen that image, as well as others.

Seizure of the Phone

Deputy Roberts properly seized defendant's cell phone because he observed images on the cell phone of defendant sexually abusing his daughter. *See United States v. Beasley*, 688 F.3d 523, 530 (8th Cir. 2012). "[T]he items were validly seized under the plain view exception to the warrant requirement. 'Under the plain-view exception, officers may seize an object without a warrant if they are lawfully in a position from which they view the object, the incriminating character of the object is immediately apparent, and the officers have lawful right of access to the object.'" *Id*.; *see also Goodale*, 738 F.3d at 921-22. Here, Roberts was lawfully in a position to view the contents of the cell phone, observed that the cell phone contained contraband, and was lawfully able to seize it.

Scope of the Search

Defendant argues that law enforcement officers exceeded the scope of Donnelly's search

7

by examining all the images on the phone that depicted defendant sexually abusing his daughter. The search "must be tested by the degree to which they exceeded the scope of the private search." *United States v. Jacobsen*, 466 U.S. 109, 115 (1984). "The Fourth Amendment is implicated only if the authorities use information with respect to which the expectation of privacy has not already been frustrated. In such a case the authorities have not relied on what is in effect a private search, and therefore presumptively violate the Fourth Amendment if they act without a warrant." *Id*. at 117-18.

In *Jacobsen*, a package was sent via Federal Express. The package had been torn during shipping. Federal Express employees examined the package and found that the package contained crumpled newspaper. Upon further inspection, the employees found that the newspaper covered a tube about ten inches long. The employees cut the tube open "and found a series of four zip-lock plastic bags, the outermost enclosing the other three and the innermost containing about six and a half ounces of white powder." *Id*. at 111. When the employees found the white powder, they contacted the D.E.A. and replaced the plastic bags in the tube and put the tube and the newspapers back in the box.

When a federal agent arrived, "he removed the four plastic bags from the tube and saw the white powder. He then opened each of the four bags and removed a trace of the white substance with a knife blade. A field test was made on the spot identified the substance as cocaine." *Id*. at 111-12. Other agents arrived and a second field test was made.

A motion to suppress was filed alleging an illegal search and seizure. It was denied but was reversed by the court of appeals. The Supreme Court reversed the court of appeals, finding that the search was proper because the private search frustrated any expectation of privacy the

8

defendant had in the package. That was true even though the Federal Express employees had not conducted a field test and therefore the agents exceeded the scope of the private search. "The field test at issue could disclose only one fact previously unknown to the agent-whether or not a suspicious white powder was cocaine." *Id*.

Here, Donnelly's viewing of the image and video files on defendant's cell phone revealed the nature of the files and frustrated any expectation of privacy that defendant may have had in the images. Donnelly viewed the files depicted child pornographic images of the victim. Law enforcement's viewing of the files on defendant's cell phone, including those viewed as a result searches at the Narcotics' Office, revealed the same type of images: images of child pornography. Thus, law enforcement's viewing the images of child pornography on defendant's cell phone did not exceed the scope of the private search.

<u>State Search Warrant</u>

Even if the Court rules that the police's search exceeded the scope of the private search, the Court should not suppress the evidence obtained from the cell phone. Poe applied for a state search warrant. Defendant is not contending that the state search warrant violated the Fourth Amendment, only that the cell phone was not included in the warrant. Poe, however, believed that the search warrant covered the phone because the phone was seized from the residence just a short time earlier. In the search warrant affidavit, Poe explained that Roberts seized the phone after viewing its contents. *See* Attachment 2, ¶2. Poe discussed with the prosecutor whether the search warrant would cover the phone, and the prosecutor believed it would. On the search warrant return, the phone was listed as: "One LG Brand Phone provided by Report Party upon initial arrival." *See* Attachment 4.

It is assumed, for the sake of argument, that the phone was not seized and searched pursuant to the search warrant because Poe removed it from the property when he applied for the warrant. Based upon this assumption, defendant seeks to suppress the evidence obtained during the search of the phone.

Generally, evidence obtained in violation of the Fourth Amendment is inadmissible under the exclusionary rule. *United States v. Ortiz-Cervantes*, 863 F.3d 695, 702 (8th Cir. 2017). The "rule is a judicially created remedy designed to safeguard Fourth Amendment rights generally though its deterrent effect. . . ." *United States v. Calandra*, 414 U.S. 338, 348 (1974). However, the evidence is admissible if the officers executing the search warrant were acting in good faith. *See id.* The test is whether the officers' good faith was objectively reasonable. *Id*.

Good faith does not apply where:

(1) the supporting affidavit or testimony includes a false statement made knowingly and intentionally or with reckless disregard for the truth to mislead the issuing judge;
(2) the issuing judge 'wholly abandoned his judicial role' in issuing the warrant;
(3) the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or
(4) the warrant is 'so facially deficient' that no police officer could reasonably presume the warrant to be valid.

*Id.* at 702-3 (citations and quotation marks omitted). None of these applies here. Thus, the good faith exception applies if the officers' good faith was objectively reasonable.

Here, the evidence obtained during the subsequent search at the Jefferson County Sheriff Narcotics' Office should not be suppressed because Poe acted in good faith. Poe asked the on-call prosecutor whether the search warrant covered the phone. The prosecutor told Poe it would be covered. "One relevant circumstance to consider when determining whether an officer's

10

actions were objectively reasonable is whether the officer consulted with an attorney prior to seeking the warrant." *United States v. Clay*, 646 F.3d 1124, 1127 (8th Cir. 2011). Poe did consult with an attorney and acted on the attorney's advice. Thus, the evidence should not be suppressed.

Inevitable Discovery

In addition to a good faith reliance on the state search warrant granting authority to search the phone, the doctrine of inevitable discovery would apply. Under the doctrine of inevitable discovery, the Court should not suppress the evidence because the contents of defendant's cell phone would have been ultimately discovered. "Exclusion of physical evidence that would inevitably have been discovered adds nothing to either the integrity or fairness of a criminal trial." *Nix v. Williams,* 467 U.S. 431, 446 (1984).

"If the government 'can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means . . . [then] the evidence should be received.' *Nix v. Williams,* 467 U.S. 431, 444 (1984). For that exception to apply the government must show (1) a reasonable probability that the evidence would have been discovered by lawful means in the absence of police misconduct, and (2) an active pursuit of a substantial, alternative line of investigation at the time of the constitutional violation." *United States v. Allen*, 713 F.3d 382, 387 (8th Cir. 2013).

Here, police lawfully search defendant's cell phone. However, if the Court determines that their search violated the Fourth Amendment, the Court should not suppress the evidence. Poe was actively seeking a search warrant and believed that the search warrant he received authorized the search the phone. Once he became aware that the search warrant did not cover the phone, he could have obtained another search warrant to search the contents of the phone. There

11

was sufficient probable cause to support a search warrant because Donnelly, as well as Roberts, observed child pornography on the phone. Additionally, the facts that were in the State Search Warrant Affidavit (Attachment 2) would have supported probable cause to search the phone as well.

Thus, even if the Court determines that the police violated the Fourth Amendment by conducting searches of the phone, the evidence should not be suppressed under the inevitable discovery exception to the exclusionary rule.

Federal Search Warrant

When the case was referred to federal prosecution, it was assigned to SA Burbridge. Burbridge determined that he should apply for another search warrant to search defendant's cell phone. So as not to improperly affect the Court's probable cause determination, Burbridge did not include the child pornography images found during the second and third law enforcement search conducted at the Jefferson County Sheriff's Department. In his affidavit, Burbridge noted:

> Because this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only those facts that I believe are necessary to establish probable cause to believe that evidence of violations of 18 U.S.C. §§ 2251, 2252, and 2252A.

*See* Attachment 5, ¶ 3. Burbridge then described the investigation in chorological order. *See id.* at ¶¶ 19 to 33. Burbridge also informed the Court that defendant was charged with three counts of child molestation in the State of Missouri. *See* Attachment 5, ¶ 30. Burbridge was not aware that additional charges had been filed against the defendant.

SA Burbridge applied for and received a federal search warrant to search the contents of defendant's cell phone. In ¶ 24 of Attachment 5, Burbridge wrote: "Deputy Roberts seized the

12

cellular telephone and no additional examination was done." This is the same language used in ¶ 2 of the state search warrant affidavit. *See* Attachment 2. Burbridge was trying to make the point that Roberts did not conduct additional examination. This becomes apparent when reading the remaining paragraphs in the Burbridge's affidavit, which follows chronologically.

Defendant argues that if the Court had the additional information, it would not have issued the search warrant. "A search warrant may be invalidated because of omitted facts if (1) the police omitted facts with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading, and (2) the affidavit, if supplemented by the omitted information, would not have been sufficient to support a finding of probable cause." *United States v. Hager*, 710 F.3d 830, 838 (8th Cir. 2013) (citations and quotations omitted).

Here, Burbridge was not trying to make the affidavit misleading. He informed the Court of the facts necessary to show probable cause up to the time of the searches at the Jefferson County Sheriff Narcotic's Office. The facts omitted from the search warrant were that Jefferson County Sheriff's Office, believing that they were authorized to search defendant's cell phone, located additional images of child pornography on defendant's cell phone. Additionally, the defendant argues that the search warrant affidavit should have included language that based upon the images located on the cell phone, the state of Missouri added more charges. If Burbridge would have added the omitted information, it would have strengthened the probable cause determination, not lessened it.

Thus, the Court should not suppress the evidence because the federal search warrant was valid and properly executed.

13

Franks Hearing

Defendant requests a Franks hearing pertaining to the federal search warrant. In *Franks v. Delaware*, 438 U.S. 154 (1978), the Court held that "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause," a hearing must be held at the defendant's request. *Id.* at 155–56. A defendant is not entitled to a hearing upon allegations of negligence or innocent mistake. *See United States v. Kattaria*, 553 F.3d 1171, 1177 (8th Cir. 2009. It is insufficient for a defendant just to identify falsehoods in an affidavit; a defendant must show that the affiant deliberately lied or recklessly disregarded the truth. *United States v. Mathison*, 157 F.3d 541, 548 (8th Cir. 1998). To be entitled to a hearing, a defendant must "make a substantial preliminary showing that a false statement was included in the affidavit (or that relevant information was omitted from it) intentionally or recklessly, and that the allegedly false statement was necessary to a finding of probable cause or that the alleged omission would have made it impossible to find probable cause." *Id.* at 547-48.

Here, defendant fails on both grounds. There is nothing to show that Burbridge intentionally or recklessly made a false statement or omitted necessary statements that would have made it impossible to find probable cause. If anything, including the omitted statements would have strengthened the probable cause determination.

Thus, the Court should deny defendant's request for a Franks hearing.

## IV.  CONCLUSION

For all of the foregoing reasons, the defendant's motion to suppress evidence should be denied.

> Respectfully submitted,
>
> JEFFREY B. JENSEN
> United States Attorney
>
>  *s/ Robert F. Livergood*
> ROBERT F. LIVERGOOD, 35432MO
> Assistant United States Attorney
> 111 S. 10th Street, Rm. 20.333
> St. Louis, Missouri 63102
> (314) 539-2200

## CERTIFICATE OF SERVICE

I hereby certify that on February 6, 2018, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Mr. Joseph Hogan
Attorney for the Defendant.

> *s/ Robert F. Livergood*
> ROBERT F. LIVERGOOD, 35432MO
> Assistant United States Attorney