UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | )Cause No. 4:17 CR 435 CDP/JMB |
| | ) |
| v. | ) |
| | ) |
| DENNIS M. SUELLENTROP, JR. | ) |
| | ) |
| | ) |
| Defendant. | ) |

DEFENDANT'S POST HEARING MEMORANDUM FOR  MOTION TO
SUPPRESS EVIDENCE AND STATEMENTS

Comes now, Joseph M. Hogan, Counsel for the Defendant, and moves the Court to suppress the following evidence, to wit – a password protected cellular phone and its contents belonging to Defendant and any evidence that was derived therefrom on the grounds that the evidence was illegally seized after a search without probable cause and in violation of defendant's rights under Fourth and Fourteenth Amendments to the United States Constitution, Mo. Const. Art. I § 15, and V.A.M.S. § 546.296, in that the police conducted a search of Defendant's phone when they looked at pictures on it, without consent and without a search warrant.  Further, after defendant had been taken into custody, without consent and without a warrant, the phone was again searched and its contents extracted by the Jefferson County Sheriff's department narcotics division.  The grounds for the Defendant's motion are as follows:

## FACTS OF THE CASE

1. On January 1, 2017, law enforcement officers were dispatched to 2566 East Rock Creek Road, Arnold Mo for a "check the well-being."

2. Upon arrival, the officer met Paul Donnelly, who informed him he did not have a working cell phone.

3. Paul Donnelly stated he went into the room of defendant, where he found a locked phone. (Motion hearing p. 9, ln 14)

4. Paul Donnelly stated he had memorized the code from being previously granted permission to make a call on defendant's phone when defendant had been present. (Motion hearing, p. 9, ln 16)

5. In the past, when Mr. Donnelly was given permission to use the phone by defendant, the defendant was "hawking over [him]." (Motion hearing, p. 10, ln 11-12)

6. Paul Donnelly was not granted permission to use defendant's phone on the date in question.  The phone was in defendant's' bed room, where defendant was sleeping. Paul Donnelly knocked on door, received no answer and went in anyway.  (Motion hearing, p. 35, lns 20-25, pg 36 ln 1-12)

7. Paul Donnelly stated he unlocked defendant's phone without permission, made a call without permission, then decided to look through defendant's

phone because he is nosy. (Motion hearing pgs 11, ln 15-16; 37, 13-17, 23-25)

8. When police arrive, Paul Donnelly handed the phone to the law enforcement officer and said "this is what I found." (Motion hearing, P. 45, ln 8-9)

9. Officer Dennis Roberts observed one picture and turned the phone off and put it in [my] pocket. (Motion hearing P. 55, ln 3).

10. Paul Donnelly told the officers about two other images he observed.  (Motion hearing p 55, 56 lns 23-2.)

11. Defendant was asleep in his bedroom when police arrived. (Motion hearing p 57, ln 15).

12. A Black LG Cellular phone with a cracked and broken screen belonging to the defendant was remanded to the custody of Sergeant Poe.

13. Officer Lunsford asked the defendant if he could search his phone and the defendant said no. (Motion hearing pg 90 lns 7-13)

14. Sergeant Poe knew on his arrival that defendant's phone had already been seized and was outside the residence; further, Sergeant Poe took custody of the phone.  (Motion hearing, pg 92, lns 18-24)

15. Sergeant Poe requested the defendant consent to a search of his residence and defendant did not consent. (Motion hearing pg 88, ln 15-18

16. Sergeant Poe requested that the defendant consent to a search of his phone, and the defendant did not consent. (Motion hearing, pg 88, ln 19-23

17. The officers were aware the defendant did not want anyone to search his phone. (Motion hearing, pg 88, ln 24-25

18. A search warrant was applied for and granted to search the residence of the defendant, after the phone referred to above had already been removed from the home and was in police custody.

19. The judge signed off on the search warrant based on the probable cause statement contained in the search warrant application. (Motion hearing pg 101 lns 18-25)

20. The phone was not included in the application for search warrant.

21. Sergeant Poe transported the phone to the Narcotics office where the information was extracted from the cellular telephone with the assistance of the narcotics personnel and their equipment and seized as Evidence item 133-8.

22. Sergeant Poe realized he did not know the password.

23. After the password was retrieved, a second extraction occurred and the information seized as 133-9, two (2) dvd's containing the information on the phone.

24. After reviewing one (1) of the two (2) discs, Sergeant Poe realized he needed a larger digital storage device and again using the assistance of narcotic personnel and their equipment, the cellular telephone content was extracted to Evidence Item 133-10, a jump drive.

25. Sergeant Poe then sets forth in his written report, what he observed from each of the searches, complete with a detail of what the images or videos depict, what date they were taken, how long they last, after which additional charges are added. (Motion hearing pgs 117, lns 18-25)

26. Defendant was charged in State court, Jefferson County, on January 3, 2017, by complaint, with three (3) counts of child molestation in the first degree, each count for an image seen on defendant's telephone as is set forth in the probable cause statement; on March 10, 2017 by amended information with an additional count IV of creating child pornography, again using evidence obtained from the defendant's phone; and on June 8, 2017 with nineteen (19) counts, a copy of which is attached and incorporated by reference (17JE-CR00001-02) each additional count added relating to images, videos seized from defendant's phone without a warrant. (Motion hearing, pg 115, lns 22-24.)

27. Shortly after Sergeant Poe filed his supplemental report containing the fruits of his warrantless searches of defendant's phone, he met with Agent Burbridge. (Motion hearing page 118, lns 12-15)

28. There was no federal involvement until, Sergeant Poe believes, the prosecutor, having received the supplemental report with all of the fruits of the unwarranted searches, contacted him.  (Page 122, lns 10-25).

29. The undersigned filed his Motion to Suppress in State Court on June 24, 2017.

30. A federal search warrant for the phone was applied for on June 20, 2017.

31. Contained in the affidavit are misstatements of fact; namely, in paragraph twenty-four (24), the officer states, "Deputy Roberts seized the cellular telephone and no additional examination was done.  The cellular telephone was a LG, Model Number K330, black in color, cracked screen, Serial Number 609CYBD091717.

32. The court indicated that as it was only to consider the four corners and Deputy Roberts did not do any further search, the statement in his opinion was not enough through omission to get a Franks hearing as it conflated Franks with a fruit of the poisonous tree issue. (Motion hearing pg 133, 23-25)

33. The undersigned, respectfully continues to argue that "no further search was done" communicates **not** that "no further search was done by Deputy Roberts, but three (3) additional unwarranted searches were conducted by the Jefferson

County sheriff's department, which resulted in their contacting the Agent Burbridge who was aware of the fruits of the unwarranted searches, but means instead "no further searches were done," a fact we know omits the subsequent searches and passing along of the fruits of those searches to a federal agency.

34. The undersigned respects this court's findings but respectfully requests all arguments be preserved for appellate purposes.

35. The federal agent had concerns about the search of the phone prior to any federal search warrant being issued and though aware of all those searches contained, decided to apply for a federal search warrant "to make sure I had all the evidence that was inside the phone…" (Motion hearing pg 125, lns 4-5, and pg 125, lns 15-23).

36. Further, though defendant was in fact charged with nineteen (19) counts on June 8, 2017, each of which was added due to the evidence obtained from the search of the phone, the officer stated in his affidavit that "Sullentrop was charged with three (3) counts of child molestation in the State of Missouri." (see paragraph thirty (30)).

37. A federal search warrant was issued on June 20, 2017, for the cell phone.

38. The searches conducted pursuant to the warrant resulted in the finding of the same videos previously viewed by both the state and federal government

pursuant to searches and extractions without a warrant, and for which the defendant had been charged in state court.

39. A federal indictment in the above referenced cause was issued on September 27, 2017.

## LEGAL ARGUMENT

It is well established that "'searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967) (footnote omitted)).  Police are generally not allowed, without a warrant, to search digital information on cell phone seized from an individual who has been arrested.  *Riley v. California,* 134 S.Ct.2473; 189 L.Ed. 2d 430 (2014).

The Supreme Court in *Riley* considered two (2) cases, each of which dealt with the defendants' cell phones being searched after they had been arrested and the evidence used to charge the defendants with additional crimes.

In *Riley*, the defendant's phone was seized at arrest.  As in this case, "[a]t the police station about two hours after the arrest, a detective…further examined the contents of the phone. 134 S.Ct. at 2480.  The officer discovered photos and videos

on the phone related to other criminal activity and based on those images, the defendant was charged with offenses related to that evidence.

In the related case (Wurlie), the phone in question was a flip phone, not similar to the smart phone used in this case and the *Riley* case.

The Supreme Court has determined that ""[w]here a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing. . .reasonableness generally requires the obtaining of a judicial warrant."" *Riley, Id. at* 2482 (*quoting Vernonia School Dis.* 47J v. *Acton*, 515 U.S. 646 (1995).  In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement.  *Riley, Ibid. (See Kentucky v. King,* 563 U.S. 452 (2011)).

The *Riley* cases deal with an exception to the general warrant requirement; that is, when the search occurs incident to arrest.  The Riley court reviewed the line of cases that have evolved in regards to this exception.  The Court specifically declined to extend *United States v. Robinson,*414 U.S. 218 (1973) to searches of data on cell phones and hold instead that officers must generally secure a warrant before conducting a search. *Riley*, *Id. at 2485.*

The arguments generally made for the necessity of a search of the data contained on a cell phone and that courts consider are not present in this case.

First, the defendant has never had possession of the cell phone from the time the police were called until the phone was searched first when the reporting witness handed the phone to police, next when the detective took the device to the narcotics division and requested an extraction without a warrant, next when the detective obtained the password and completed another unwarranted search, next when the detective turned the phone over to the Federal Bureau of Investigations, and finally when the final search was conducted, after several searches had already been completed without a warrant, and for which the defendant was charged with additional criminal counts.   As such there is no argument the police had any fear for their safety.

Second, there is no argument that the police were afraid that evidence would be destroyed as after they first searched the phone at the scene, defendant was taken into custody.  Defendant never had access to his phone again.  There can be no question that the officers could have applied for a search warrant first, when they arrived at the home and heard what the witness had to say and had secured the phone while defendant was still asleep.  Instead, the first responding officer searched the phone when he looked at it, knowing the phone did not belong to the witness.  The officers could have again applied for a search warrant after they had seized the phone and taken the defendant into custody.  Here the officers did apply for and receive a search warrant, but did not include or request the phone be

included in the warrant, despite the fact they had already searched and seen images that allowed them to request defendant be charged with three counts of child molestation.  The Government's own witnesses illustrate that they did not include the phone, yet searched the phone repeatedly anyway without a warrant.

The Government has made no argument that there were any exigent circumstances that would have allowed the Jefferson County Sheriff's Department to search the phone; rather, the Government has suggested that the inclusion of "mass storage device" on the application included the particular phone, when no mention of any phone is contained anywhere in the application or affidavit sworn out in order to obtain the initial state search warrant.

Just as in *Riley*, defendant argues that each of the searches of his cell phone data without consent, and those conduct without and with the search warrant violate his Fourth Amendment Rights guaranteed by the United States Constitution and respectfully requests the Motion to Suppress the evidence obtained in each of the searches be granted, including those pursuant to the federal search warrant, as fruit of the poisonous tree.

At the time the search warrant was sought, the defendant was represented by counsel.  When the undersigned entered his appearance, the defendant was charged with three (3) counts of child molestation.  When the federal search warrant was

sought, contrary to the affidavit, the defendant was charged with sixteen (16) counts all related to pictures and videos obtained from unwarranted searches of the seized telephone and without a warrant.

The United States attorneys office was contacted by the Jefferson County prosecutor after three (3) unwarranted searches were conducted on the defendant's phone.  There has been no evidence offered by the Government that would suggest the federal government would have been contacted for any reason involving this case, save for the unwarranted searches conducted on the phone.

The defendant recognizes that evidence obtained through an unlawful search is admissible when that evidence is also obtained lawfully through an independent source.  Murray v. United States, 487 U.S. 533, 538-539 (1988).  Notably, however, the independent source doctrine applies when the United States would have applied for a warrant without having first acquired tainted information AND the affidavits in support of the warrant application establish probable cause without any reliance on the tainted information.  *United States v. Swope*, 542 F.3d 609 (8th Cir. 2008).

Here, the evidence conclusively illustrates that Agent Burbridge would not have applied for a search warrant without having received the tainted information provided to him from the Jefferson County Prosecutor.  Agent Burbridge agreed

that he was not involved in any investigation regarding the defendant until the

Jefferson County prosecutor's office contacted the United States attorney's office,

after all the unwarranted searches had been conducted.  Further, Agent Burbridge's

testimony illustrates that no one contacted the United States attorney or the Federal

Bureau regarding defendant's case, or the original photograph the deputy observed.

Rather, after the subsequent searches were conducted, evidence obtained and

reports forwarded to the prosecutor regarding those searches, then the federal

government was contacted.

The government cannot satisfy the first prong necessary to rule in favor of

the independent source doctrine.  Agent Burbridge himself had concerns about the

previous unwarranted state searches of the cell phone that and those concerns led

him to seek a federal search warrant because he didn't know whether those

searches would hold up eight months later.

Defendant argues that under the present facts, the fruits of the warrant

should not stand under the independent source exception.  A warrant obtained after

an illegal search is not an independent source if either of the following are true: "if

the agents' decision to seek the warrant was prompted by what they had seen

during the initial entry," and "if information obtained during that entry was

presented to the Magistrate and affected his decision to issue the warrant." *Murray*

*v. United States,* 487 U.S. 533, 542 F.3d 609, 108 S. Ct. 2529, 101 L. Ed. 2d 472

[(1988)]. In other words, *Murray* asks the following two questions, both of which

must be answered in the affirmative for the warrant to be an independent source:

first, would the police have applied for the warrant had they not acquired the

tainted information; and second, do the application affidavits support probable

cause after the tainted information has been redacted from them.

In the instant case, then, the question is whether the officers would have

asked the federal agent to obtain a warrant without the information they had

already obtained from the phone, and second, do the application affidavits support

probable cause after the tainted information has been redacted from them.

In this case, then, the first question is dispositive.  The transcripts of the

motion hearing provide clear evidence that the federal government would never

have been contacted without the fruits of the warrantless searches conducted by the

Jefferson County Sheriff's department.  The federal officer, then, realizing there

may be a search violation, and after becoming aware of all of the evidence

obtained from the searches and reviewing it, and then determining it was

something to be pursued, crafts a search warrant to satisfy the second prong;

however, under the present facts and circumstances there has been no evidence

whatsoever to satisfy the first prong.  The independent source doctrine does not

apply to the present case.  (<u>See for eg</u> *United States v. Brooks*, 715 F.3d 1069 (8th

Cir. 2013);

The evidence must be suppressed under the exclusionary rule under the facts

before the court.  A violation of the Fourth Amendment does not automatically

trigger the application of the exclusionary rule.  Herring v. U.S., 555 U.S. 135

(2009).  The court must determine "the efficacy of the rule in deterring Fourth

Amendment violations in the future. Id., at 141. (citing United States v. Calandra,

414 U.S. 338 (1974)  The Court must weigh the benefits of applying the rule

against its costs.

Here, when weighing the costs, the balance tips towards excluding any

images seized from the cell phone of defendant.  The undersigned is aware that, as

in this case, the court must weigh the cost, of letting a guilty or possibly dangerous

defendant go free (See Leon, 488 U.S. at 908) against the benefit of applying the

exclusionary rule: that is, if the exclusionary rule is not applied, law enforcement

agencies are able to seize and search all cell phones and when they discover

information that they believe is useful to pursuing a criminal case, contact federal

authorities, alert them of the information already seized, and encourage them to go

back to a point in time during the investigation where they could have sought a

search warrant and for simplicity's sake, request a "do-over," erasing virtually all

of the protections afforded and contemplated in *Riley*.

The undersigned respectfully argues that under these facts, where officers had sole control of a cell phone, could have at any time sought to obtain a search warrant, instead conducted at least three (3) unwarranted searches on the cell phone, added sixteen (16) counts to its indictment based on illegally obtained evidence, then contacted the federal government, provided them with the illegally obtained evidence, and the Government only then sought a search warrant trying to erase all that had occurred earlier and not offering any suggestion they would have otherwise become involved, nor any independent investigation regarding the defendant that would have led them to seek the search warrant, undoubtedly invokes the exclusionary rule.  The costs of this investigation as opposed to the law enforcement agencies being permitted to conduct unfettered unwarranted searches on seized items and then use the fruits of those unwarranted searches does not pass constitutional muster.

The defendant respectfully requests the Defendants Motion to Suppress Evidence and Motion to Suppress any Statements obtained after the illegal search was conducted be GRANTED.

Respectfully submitted,

  /S/   Joseph M. Hogan

Attorney for Defendant

Jmhogan4090@sbcglobal.net

Certificate of Service

The undersigned attorney hereby certifies that an electronic copy of said memorandum was electronically delivered to the United States Attorneys Office for the eastern District of Missouri this 7th day of June, 2018.

  /S/  Joseph M. Hogan